UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BANK OF AMERICA, N.A., | Case No. 2:15-CV-691 JCM (NJK) |
| Plaintiff(s), | ORDER |
| v. | |
| SFR INVESTMENTS POOL 1 LLC, et al., | |
| Defendant(s). | |

Presently before the court is plaintiff/counter-defendant Bank of America, N.A.'s motion for summary judgment. (ECF No. 53). Defendant/counter-claimant SFR Investments Pool 1, LLC ("SFR") filed a response (ECF No. 62), as did defendant Mesa Verde Homeowners Association (the "HOA") (ECF No. 64), to which the bank replied (ECF No. 67).

Also before the court is the HOA's motion for summary judgment. (ECF No. 54). The bank filed a response (ECF No. 60), to which the HOA replied (ECF No. 65).

Also before the court is SFR's motion for summary judgment. (ECF No. 55). The bank filed a response, (ECF No. 59), to which SFR replied (ECF No. 66).

**I.     Facts**

The present case involves a dispute over real property located at 3912 Thomas Patrick Avenue, North Las Vegas, Nevada (the "property"). (ECF No. 4 at 3). Crystal Cole (the "borrower") purchased the property on March 3, 2008. (ECF No. 4 at 3). The borrower financed the purchase with a Federal Housing Administration ("FHA") insured loan in the amount of $185,179.00 loan that was secured by a deed of trust dated, and recorded on, March 3, 2008. (ECF No. 4-1 at 11).

**James C. Mahan**
**U.S. District Judge**

On December 15, 2010, the HOA recorded a notice of delinquent assessment lien through its trustee, Alessi & Koenig ("A&K").  (ECF No. 4-5).  The notice asserted that the borrower owed $990.00 to the HOA.  (ECF No. 4-5 at 2).

On April 20, 2011, the HOA recorded, through its trustee, a notice of default and election to sell to satisfy the delinquent assessment lien.  (ECF No. 4-6).  The notice asserted that the borrower owed $2,140.00 in fees.  (ECF No. 4-6 at 2).  On the same day as it was recorded, A&K mailed the notice of default and election to sell to Mortgage Electronic Registration Services ("MERS").  (ECF No. 55-8).  The bank received this notice on May 16, 2011.  (ECF No. 55-9 at 4).

On June 28, 2011, the deed of trust was assigned to BAC Home Loans Servicing, LP ("BAC") FKA Countrywide Home Loans Servicing, LP, via an assignment of deed of trust. (ECF No. 4-4).  The assignment was recorded on July 6, 2011.  (ECF No. 4-4).  The bank obtained interest in the deed of trust as successor in interest by merger to BAC.  (ECF No. 4 at 4).[1]

On July 29, 2013, A&K mailed a notice of trustee's sale (via certified mail, return receipt requested) to the borrower, the bank, and MERS.  (ECF Nos. 55-11).  On July 31, 2013, the HOA recorded the notice of trustee's sale through its agent.  (ECF No. 4-7).  The notice asserted that the borrower owed $6,767.30 and that the trustee's sale would occur on August 28, 2013. (ECF No. 4-7 at 2).

A&K held the trustee's sale on August 28, 2013, at which SFR purchased the property for $10,100.00.  (ECF No. 4-10 at 2).  The foreclosure deed was recorded on September 9, 2013. (ECF No. 4-10).

On April 27, 2015, the bank filed an amended complaint, asserting four claims against the HOA and SFR: (1) declaratory relief/quiet title; (2) wrongful foreclosure against the HOA; (3) breach of Nevada Revised Statute ("NRS") 116.1113 against the HOA; and (4) injunctive relief against SFR.  (ECF No. 4).

---

[1] For the remainder of this order, the court will refer to BAC in conjunction with the Bank of America, N.A., simply as the "bank."

James C. Mahan
U.S. District Judge

- 2 -

The bank contends that the HOA's foreclosure sale did not extinguish the senior deed of trust because (1) the FHA had an interest in the deed and an extinguishment of the federal government's interest would be in violation of the Constitution, (2) the notices were insufficient under Nevada law, (3) the HOA wrongfully rejected the bank's tender of the super-priority amount, (4) the sale was commercially unreasonable, and (5) Nevada's statutory scheme providing superpriority liens to homeowners associations is violative of procedural due process under the Constitution. (ECF No. 4 at 7–9). The bank also maintains that the HOA violated NRS 116.1113 by falsely promising that its liens were subordinate to the senior deed of trust and thereafter failing to notify the bank that its security interest was at risk. (ECF No. 4 at 10–11).

On July 2, 2015, SFR filed an answer and counter/cross-claim asserting two claims of relief against the bank and the borrower: (1) declaratory relief/quiet title; and (2) preliminary and permanent injunction. (ECF No. 19).

## II. Legal standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed*., 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc*., 213 F.3d 474, 480

James C. Mahan
U.S. District Judge

- 3 -

(9th Cir. 2000). Moreover, "[i]n such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *Id.*

By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the non-moving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The Ninth Circuit has held that information contained in an inadmissible form may still be considered for summary judgment if the information itself would be admissible at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.")).

. . .

. . .

. . .

. . .

. . .

### III. Discussion[2]

In its motion, SFR moves for summary judgment on its cross/counterclaims for quiet title and preliminary and permanent injunctions, (ECF No. 55), whereas the bank moves for summary judgment on its claims for quiet title, wrongful foreclosure, breach of NRS 116.1113, and injunctive relief, (ECF No. 53).

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (citations and internal quotation marks omitted). Therefore, for claimant to succeed on its quiet title action, it needs to show that its claim to the property is superior to all others. *See Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

SFR asserts that summary judgment in its favor is proper because, *inter alia*, the foreclosure sale extinguished the bank's deed of trust pursuant to NRS 116.3116 and *SFR Invs. Pool 1, LLC v. U.S. Bank, N.A.*, 334 P.3d 408, 412–14 (Nev. 2014) ("*SFR Investments*") and because the bank has not met the fraud, unfairness, or oppression requirement to set aside a foreclosure sale as outlined in *Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc.*, 366 P.3d 1105, 1112 (Nev. 2016) ("*Shadow Wood*"). (ECF No. 55). The HOA echoes some of SFR's arguments in its motion for summary judgment, asserting that summary judgment is appropriate as to SFR's quiet title action. (ECF No. 54).

---

[2] The 2015 Legislature substantially revised Chapter 116. 2015 Nev. Stat., ch. 266. Because Chapter 116 operates by allowing a foreclosure sale only after specific conditions are met, the court must look at the statutes in effect on the day of the sale: August 28, 2013. *See* Nev. Rev. Stat. § 116.31162 (providing that the association may foreclose its lien by sale after all of the statutory provisions occur); *Saticoy Bay LLC Series 2021 Gray Eagle Way v. JPMorgan Chase Bank, N.A.*, 388 P.3d 226, 231 (Nev. 2017) ("Under NRS 116.31162(1), an HOA may foreclose its lien by sale only after it takes certain steps."). As such, the references in this order to statutes codified in Chapter 116 are to the statutes in effect on that date unless otherwise noted.

The bank contends that summary judgment in its favor is proper because, *inter alia*, (1) it tendered the superpriority portion, but the HOA wrongfully refused the tender; (2) the foreclosure sale was conducted contrary to federal law, (3) the foreclosure sale was commercially unreasonable, (4) the foreclosure sale is invalid because the notice scheme of NRS Chapter 116 is facially unconstitutional, and (5) *SFR Investments* should not be applied retroactively. (ECF No. 53).

Notably, the Nevada Supreme Court has held that foreclosure of an HOA superpriority lien under Chapter 116 will extinguish all lower priority interests. *See SFR Investments*, 334 P.3d at 412–14. If this court finds a properly conducted foreclosure sale, only through equity will the bank prevail. However, "a court of equity acts with caution." *Hurley v. Kincaid*, 285 U.S. 95, 104 n.3 (1932). Indeed, the court finds that exercising such caution is warranted in this case.

### 1. *Nev. Rev. Stat. § 116.3116*

NRS § 116.3116(1) gives an HOA a lien on its homeowners' residences for unpaid assessments and fines; moreover, NRS 116.3116(2) gives priority to that HOA lien over all other liens and encumbrances with limited exceptions—such as "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b). The statute then carves out a partial exception to subparagraph (2)(b)'s exception for first security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investments*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d at 411 (Nev. 2014).

NRS Chapter 116 permits an HOA to enforce its superpriority lien by nonjudicial foreclosure sale. *Id*. at 415. Thus, "NRS 116.3116(2) gives an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

James C. Mahan
U.S. District Judge

### 2.  *FHA insurance*

The bank argues that the HOA lien statute cannot interfere with the federal mortgage insurance program or extinguish mortgage interests insured by the FHA. (ECF No. 53 at 6–12).

The single-family mortgage insurance program allows FHA to insure private loans, expanding the availability of mortgages to low-income individuals wishing to purchase homes. *See Sec'y of Hous. & Urban Dev. v. Sky Meadow Ass'n*, 117 F. Supp. 2d 970, 980–81 (C.D. Cal. 2000) (discussing program); *Wash. & Sandhill Homeowners Ass'n v. Bank of Am., N.A.*, No. 2:13-cv-01845-GMN-GWF, 2014 WL 4798565, at *1 n.2 (D. Nev. Sept. 25, 2014) (same). If a borrower under this program defaults, the lender may foreclose on the property, convey title to HUD, and submit an insurance claim. 24 C.F.R. § 203.355. HUD's property disposition program generates funds to finance the program. *See* 24 C.F.R. § 291.1.

Allowing an HOA foreclosure to wipe out a first deed of trust on a federally-insured property thus interferes with the purposes of the FHA insurance program. Specifically, it hinders HUD's ability to recoup funds from insured properties. As this court previously stated in *Saticoy Bay LLC, Series 7342 Tanglewood Park v. SRMOF II 2012-1 Trust*, the court reads the foregoing precedent to indicate that a homeowners' association foreclosure sale under NRS 116.3116 may not extinguish a federally-insured loan. No. 2:13–CV–1199–JCM–VCF, 2015 WL 1990076, at *4 (D. Nev. Apr. 30, 2015).

However, the instant case is distinguishable from these cases in that, here, FHA is not a named party. (*See* ECF No. 4, 19). Neither the complaint nor the counterclaim seeks to quiet title against FHA. Further, SFR's quiet title claim does not seek declaratory relief against FHA, but only as to the bank and borrower. Thus, this argument provides no support for the bank as the outcome of the instant case has no bearing on FHA's ability to quiet title.

### 3.  *Foreclosure deed recitals*

SFR asserts that it has met its burden to show good title in itself because the foreclosure sale complied with NRS 116.3116 and *SFR Investments*. (ECF No. 55 at 6–9). SFR argues that the recorded foreclosure deed provides conclusive effect regarding the statutory prerequisites to a

valid HOA lien foreclosure sale. (ECF No. 55 at 6–9). Thus, SFR maintains, the foreclosure sale extinguished the bank's deed of trust as a matter of law. (ECF No. 55 at 10).

In response, the bank argues that SFR's reliance on the foreclosure deed's recitals to prove—as a matter of law—that the foreclosure sale quiets title, is contrary to the court's holding in *Shadow Wood*. (ECF No. 59 at 5–6). The bank claims that the foreclosure deed's recitals, as held in *Shadow Wood*, are conclusive proof only as to default, notice, and publication of the notice of sale and are not conclusive as to commercial reasonableness. (ECF No. 59 at 5–6).

The court agrees with this argument. NRS 116.31166(1) provides:

> 1.  The recitals in a deed made pursuant to NRS 116.31164 of:
> (a) Default, the mailing of notice of delinquent assessment, and the recording of the notice of default and election to sell;
> (b) The elapsing of the 90 days; and
> (c) The giving of notice of sale,
> Are conclusive proof of the matters recited.

Nev. Rev. Stat. § 116.31166(1).

> NRS 116.31166's enactment[] did not eliminate the equitable authority of the courts to consider quiet title actions when an HOA's foreclosure deed contains conclusive recitals. We therefore reject [the] contention that NRS 116.31166 defeats, as a matter of law, [an] action to set aside the trustee's deed and to quiet title in itself.

*Shadow Wood*, 366 P.3d at 1112.

Here, SFR has provided the recorded trustee's deed upon sale (ECF No. 55-16), as well as the recorded notice of delinquent assessment lien (ECF No. 55-6), the recorded notice of default and election to sell (ECF No. 55-8), and the recorded notice of trustee's sale (ECF No. 55-12). Pursuant to NRS 116.31166, these recitals in the recorded foreclosure deed are conclusive to the extent that they implicate compliance with the default, notice, publication of the notice of default, and timing statutory prerequisites of a valid foreclosure provided under NRS 116.31162 through NRS 116.31164.

In light of the foregoing, the court will grant SFR's motion for summary judgment as it relates to the foreclosure sale's compliance with the statutory prerequisites set forth in NRS 116.31166. Importantly, these recitals' conclusive effects "do not defeat equitable relief . . . rather, such recitals are conclusive, *in the absence of grounds for equitable relief.*" *Shadow Wood*, 336 P.3d at 1111–12 (citation omitted) (emphasis in original).

James C. Mahan
U.S. District Judge

- 8 -

### 4. *Rejected tender*

Under NRS 116.31166(1), the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing that security interest. *See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Investments*, 334 P.3d at 414 ("But as a junior lienholder, U.S. Bank could have paid off the SHHOA lien to avert loss of its security . . . ."); *see also, e.g.*, *7912 Limbwood Ct. Trust v. Wells Fargo Bank, N.A., et al.*, 979 F. Supp. 2d 1142, 1149 (D. Nev. 2013) ("If junior lienholders want to avoid this result, they readily can preserve their security interests by buying out the senior lienholder's interest." (citing *Carillo v. Valley Bank of Nev.*, 734 P.2d 724, 725 (Nev. 1987); *Keever v. Nicholas Beers Co.*, 611 P.2d 1079, 1083 (Nev. 1980))).

The superpriority lien portion, however, consists of "the last nine months of unpaid HOA dues ***and maintenance and nuisance-abatement charges***," while the subpriority piece consists of "all other HOA fees or assessments." *SFR Investments*, 334 P.3d at 411 (emphasis added); *see also 7912 Limbwood Ct. Trust*, 979 F. Supp. 2d at 1150 ("[T]he super priority lien consists only of unpaid assessments and certain charges specifically identified in § 116.31162.").

The bank argues that it attempted to pay the superpriority amount of the lien, but it could not determine what amount constituted the superpriority portion because A&K sent only a ledger that indicated the total amount due. (ECF No. 53 at 4). Thus, in an attempt to avoid paying both the superpriority and subpriority portion, the bank estimated the superpriority portion of the lien on its own, and tendered payment for $495.00 (its estimation of nine-months' worth of assessments) instead of the full indicated amount of $2,885. (ECF No. 53 at 4). The bank argues that the HOA's rejection of this tender invalidates the foreclosure sale. (ECF No. 53 at 16). The court disagrees.

The bank's act of estimating nine-months' worth of assessments was highly risky for several reasons. First, *SFR Investments* is clear in its holding that the superpriority portion of the HOA lien consists of more than just "the last nine months of unpaid HOA dues." 334 P.3d at 411. Thus, the bank's calculation was inherently flawed because it did not account for the "maintenance and nuisance abatement charges." *Id.* Second, although this calculation was done to avoid paying

James C. Mahan
U.S. District Judge

- 9 -

the subpriority amount, if the bank would have tendered payment of the entire amount, then it could have subsequently sought a refund. *See id.* at 418 (finding that a bank could have paid the full amount and then "request[ed] a refund of the balance").

Additionally, the bank attached restrictive terms and conditions with its tender that limited the legal rights of the HOA if payment was accepted. In the bank's letter to the HOA, in which the check was enclosed, it asserts:

> [A]ny endorsement of said cashier's check on your part, whether express or implied, will be strictly construed as an unconditional acceptance on your part of the facts stated herein and express agreement that [the bank's] financial obligation towards the HOA in regards to real property located at 3912 Thomas Patrick Avenue have now been "paid in full."

(ECF No. 53-7 at 14). The bank tendered nine-months' worth of assessments, which did not include nuisance and abatement charges, claimed that value was the superpriority amount, attached terms that would force the HOA to admit that this was the proper amount, and now claims that rejection of this improper amount that had these restrictive terms constitutes rejected tender. (ECF No. 53 at 16). The court is unpersuaded by this argument because the amount calculated was incorrect. By attempting to calculate the amount on its own and to force the HOA into agreeing that this was the proper amount, the bank tried to create its own reality about the proper amount of the superpriority liens. In fact, the bank tendered an inaccurate amount.

### 5. *Equitable relief*

Now, after failing to use the legal remedies available to it to prevent the property from being sold to a third party—for example, seeking a temporary restraining order, a preliminary injunction, and filing a *lis pendens* on the property (*see* Nev. Rev. Stat. §§ 14.010, 40.060)—the bank seeks to profit from its own failure to follow the rules set forth in the statutes by invoking equitable relief. *See generally, e.g.*, *Barkley's Appeal. Bentley's Estate*, 2 Monag. 274, 277 (Pa. 1888) ("In the case before us, we can see no way of giving the petitioner the equitable relief she asks without doing great injustice to other innocent parties who would not have been in a position to be injured by such a decree as she asks if she had applied for relief at an earlier day."); *Nussbaumer v. Superior Court in & for Yuma Cty*., 489 P.2d 843, 846 (Ariz. 1971) ("Where the complaining party has access to all the facts surrounding the questioned transaction and merely

James C. Mahan
U.S. District Judge

- 10 -

makes a mistake as to the legal consequences of his act, equity should normally not interfere, especially where the rights of third parties might be prejudiced thereby.").

While this court will analyze the bank's equitable arguments under quiet title, this court notes that the failure to utilize legal remedies, as set forth above, makes granting equitable remedies unlikely. *See Las Vegas Valley Water Dist. v. Curtis Park Manor Water Users Ass'n*, 646 P.2d 549, 551 (1982) (declining to allow equitable relief because an adequate remedy existed at law). Simply ignoring legal remedies does not open the door to equitable relief.

### i.   *Inadequate price*

The bank argues that the purchase price of $10,100.00, in light of the $118,000.00 property appraisal value, is grossly inadequate because the purchase price is 9% of the property's value. (ECF No. 53 at 1–2). As support, the bank provides the appraisal report of Scott Dugan, wherein Dugan concluded that on August 28, 2013, the property's value was $118,000.00. (ECF No. 53-9 at 10).

The general rule requires a 20% sale price of fair market value to establish gross inadequacy. *See Shadow Wood*, 366 P.3d at 1112. The *Shadow Wood* court remanded for further fact-finding, but noted that it had approved sales for as low as 28.5% and that the apparent 23% ratio in that case was not "obviously" inadequate. *See id.* (citing *Golden v. Tomiyasu*, 387 P.2d 989, 993 (Nev. 1963); Restatement (Third) of Prop.: Mortgages § 8.3 cmt. b (1997)).

Here, the bank has satisfied its initial burden as to gross inadequacy by setting forth the evidence that the property was purchased at the foreclosure sale for 9% of its market value. *See* (ECF Nos. 53-9 at 10 (estimating a $118,000.00 property value on the foreclosure sale date); 55-16 (indicating sale for $10,100.00)); *see also Nationstar Mortg., LLC*, 184 F. Supp. 3d at 857 (finding sale price of less than 5% of the secured amount sufficient to satisfy initial burden of showing gross inadequacy).

### ii.   *Fraud, unfairness, or oppression*

On a motion for summary judgment, the bank must also demonstrate sufficient grounds to justify setting aside the foreclosure sale. In other words, inadequate price is not enough to warrant

setting aside a foreclosure sale; there must also be a showing of fraud, unfairness, or oppression. *See Shadow Wood*, 366 P.3d at 1112; *Long*, 639 P.2d at 530.

The bank attempts to claim that a grossly inadequate price alone is enough to show fraud, unfairness, or oppression. (ECF No. 53 at 12–14). The bank relies on its assertion that the Nevada Supreme Court adopted the Restatement (Third) of Property: Mortgages in *Shadow Wood* to prove it has met its burden at trial. (ECF No. 53 at 12–14). In support, the bank quotes a parenthetical explanation, which quotes the Restatement, and attempts to pass it off as the court's holding in *Shadow Wood*. (ECF No. 53 at 13).

The *Shadow Wood* court makes no such holding. Furthermore, no language exists in *Shadow Wood* that exhibits the Nevada Supreme Court's intention to adopt the Restatement. *Compare Shadow Wood*, 366 P.3d at 1112 (citing the Restatement as secondary authority to warrant use of the 20% threshold test for grossly inadequate sales price), *with St. James Village, Inc. v. Cunningham*, 210 P.3d 190, 191 (Nev. 2009) (explicitly adopting § 4.8 of the Restatement in specific circumstances); *Foster v. Costco Wholesale Corp.*, 291 P.3d 150, 153 (Nev. 2012) ("[W]e adopt the rule set forth in the Restatement (Third) of Torts: Physical and Emotional Harm section 51."); and *Cucinotta v. Deloitte & Touche, LLP*, 302 P.3d 1099, 1102 (Nev. 2013) (affirmatively adopting the Restatement (Second) of Torts section 592A).

Because Nevada courts have not adopted the relevant section(s) of the Restatement at issue here, the *Long* test, which requires a showing of fraud, unfairness, or oppression in addition to a grossly inadequate sale price to set aside a foreclosure sale, controls. *See* 639 P.2d at 530. Therefore, because the bank has not shown fraud, unfairness, or oppression, it is not entitled to have the court set aside the foreclosure sale.

### iii. Bona fide purchaser

Moreover, when sitting in equity, "courts must consider the entirety of the circumstances . . . . This includes considering the status and actions of all parties involved including whether an innocent party may be harmed by granting the desired relief." *Shadow Wood*, 366 P.3d at 1114 (citation omitted). The issue of bona fide purchaser ("BFP") status is distinct from that of the conclusiveness of deed recitals. Specifically, the issue of BFP status "concerns a buyer's

knowledge of competing interests," whereas the other "concerns a statutory presumption that can be equitably overcome under *Shadow Wood*." *See, e.g.*, *Nationstar Mortg., LLC*, 184 F. Supp. at 859.

A BFP is a person who purchases real property "for a valuable consideration and without notice of the prior equity, and without notice of facts which upon diligent inquiry would be indicated and from which notice would be imputed to him, if he failed to make such inquiry." *Bailey v. Butner*, 176 P.2d 226, 234 (Nev. 1947) (emphasis omitted); *see also Moore v. De Bernardi*, 220 P. 544, 547 (Nev. 1923) ("The decisions are uniform that the bona fide purchaser of a legal title is not affected by any latent equity founded either on a trust, [e]ncumbrance, or otherwise, of which he has no notice, actual or constructive."). Under Nevada law, "bona fide purchaser" means as follows:

> Any purchaser who purchases an estate or interest in any real property in good faith and for valuable consideration and who does not have actual knowledge, constructive notice of, or reasonable cause to know that there exists a defect in, or adverse rights, title or interest to, the real property is a bona fide purchaser.

Nev. Rev. Stat. § 111.180(1). "In other words, a later-obtained interest can prevail over an earlier-obtained interest where the later purchaser has no knowledge of the previous interest and records his interest first." *See Nationstar Mortg., LLC*, 184 F. Supp. 3d at 860.

SFR argues that it paid value for the property and took without notice of a competing or superior interest in the property at the time of the foreclosure sale. (ECF No. 55 at 17–19). The bank merely asserts without adequate support that SFR is a professional property purchaser and concludes that such basis alone is sufficient to preclude SFR's status as a BFP. (ECF No. 53 at 20). Such conclusory allegations without specific facts supported by competent evidence are insufficient to raise a genuine issue for trial. *See Celotex*, 477 U.S. at 324. Therefore, the bank provides no competent evidence sufficient to raise a genuine dispute as to SFR's status as a bona fide purchaser.

Not only has the bank not provided evidence substantiating the fraud, unfairness, or oppression element under the *Long* test, but its pre-foreclosure inaction weighs heavily against equitable relief. Weighing the totality of the circumstances at issue here, the court finds it inequitable to set aside the foreclosure sale.

James C. Mahan
U.S. District Judge

- 13 -

### *6. Due process*

In its motion, the bank asserts that the notice scheme of NRS Chapter 116 is facially violative of the due process clause; therefore, the foreclosure sale is invalid. (ECF No. 53 at 26–30).

The HOA and SFR argue that the foreclosure sale could not be unconstitutional because it lacked state action. (ECF Nos. 64 at 7–8; 62 at 25–27). The court disagrees.

The Ninth Circuit held that NRS 116.3116's "opt-in" notice scheme, which required an HOA to alert a mortgage lender that it intended to foreclose only if the lender had affirmatively requested notice, facially violated mortgage lenders' constitutional due process rights. *Bourne Valley*, 832 F.3d at 1157–58. The *Bourne Valley* court also held that the Nevada legislature's enactment of Chapter 116 constituted state action. *Id.* at 1154. Therefore, *Bourne Valley* clearly rejects both of defendants' arguments. *See id.*

This court declines to follow the Nevada Supreme Court's recent decision in *Saticoy Bay LLC Series 350 Durango 104 v. Wells Fargo Home Mortg.*, 388 P.3d 970 (Nev. 2017), as clear, recent, and binding precedent exists to resolve this issue. *See Bourne Valley*, 832 F.3d at 1157–58. Accordingly, this court rejects SFR and the HOA's argument that state action does not exist.

The bank's claim, however, similarly fails. (ECF No. 53 at 26–30). The facially unconstitutional provision, as identified in *Bourne Valley*, is present in NRS 116.31163(2). *Bourne Valley* 832 F.3d at 1158. At issue here is the "opt-in" provision that unconstitutionally shifts the notice burden to holders of the property interest at risk. As asserted before, but bearing weight here, is that due process requires "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 1158 (citing *Mennonite*, 462 U.S. 791, 795 (1983) (quotation omitted).

The bank has not suffered an injury related to the unconstitutional provision in NRS 116.31163(2). To raise question of constitutionality, the party must have sufficient Article III standing, including, *inter alia*, a "personal injury fairly traceable to the . . . allegedly unlawful conduct." *Raines v. Byrd*, 117 U.S. 811, 818–19 (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984)) (emphasis omitted). Importantly, the Ninth Circuit has held that receipt of actual notice deprives

a claimant of standing to raise a procedural due process claim. *Wiren v. Eide*, 542 F.2d 757, 762 (9th Cir. 1976)

Here, adequate notice was given to the interested parties prior to extinguishing a property right. The bank recorded its interest in the property on July 6, 2011. (ECF No. 4-4). Prior to this recording, on April 20, 2011, the HOA notified interested parties of the potential foreclosure by sending them a notice of default and election to sell. (ECF No. 55-8). The bank was not entitled to this notification because, on April 20, 2011, the bank had not yet recorded its property interest. *See* (ECF No. 4-4).

After the bank recorded its interest in the property, it received adequate notice to satisfy due process. On July 29, 2013, the HOA again notified interested parties—this time including the bank—by sending them a recorded notice of trustee's sale. (ECF No. 55-11). The notice of trustee's sale included (1) the name, address, and telephone number of the trustee conducting the sale, (2) the property at issue, (3) the time, date, and location that the sale will occur, and (4) the amount owed to satisfy the lien. (ECF Nos. 55-11). Whereas notice by mail to ensure actual notice is the minimum constitutional requirement, the notice here specifically laid out procedures to prevent extinguishment of the property interest. *See Mennonite*, 462 U.S. at 800.

As a result, the notice of trustee's sale was sufficient notice to cure any constitutional defect inherent in NRS 116.31163(2) because it put the bank on notice that its interest was subject to pendency of action and offered all of the constitutionally required information. Therefore, the court will deny the bank's motion for summary judgment as it relates to the quiet title issue of due process.

### 7. *Retroactive application of* SFR Investments

The bank posits that the court should not apply *SFR Investments* retroactively to extinguish its deed of trust. (ECF No. 53 at 25).

The Nevada Supreme Court has since applied the *SFR Investments* holding in numerous cases that challenged pre-*SFR Investments* foreclosure sales. *See, e.g.*, *Centeno v. Mortg. Elec. Registration Sys., Inc.*, No. 64998, 2016 WL 3486378, at *2 (Nev. June 23, 2016); *LN Mgmt. LLC Series 8301 Boseck 228 v. Wells Fargo Bank, N.A.*, No. 64495, 2016 WL 1109295, at *1 (Nev.

James C. Mahan
U.S. District Judge

- 15 -

Mar. 18, 2016) (reversing 2013 dismissal of quiet-title action that concluded contrary to *SFR Investments*, reasoning that "the district court's decision was based on an erroneous interpretation of the controlling law"); *Mackensie Family, LLC v. Wells Fargo Bank, N.A.*, No. 65696, 2016 WL 315326, at *1 (Nev. Jan. 22, 2016) (reversing and remanding because "[t]he district court's conclusion of law contradicts our holding in *SFR Investments Pool 1 v. U.S. Bank*"). Thus, *SFR Investments* applies to this case. Accordingly, the court will deny the bank's motion for summary judgment as to this question.

### 8. Preliminary & permanent injunction

Both the bank and SFR claim injunctive relief, seeking preliminary and permanent injunctions against the other. (ECF No. 4, 55).

The court finds no sustainable cause of action for injunctive relief. In fact, injunctive relief is a remedy, not a cause of action. *See, e.g.*, *Ajetunmobi v. Clarion Mortg. Capital, Inc.*, 595 Fed. Appx. 680, 684 (9th Cir. 2014) (citation omitted). If the parties still seek this remedy, it would properly be brought as a motion under Federal Rule of Civil Procedure 65. Therefore, the court will dismiss both claims for injunctive relief.

### 9. NRS 116.1113

Upon review of the various filings and exhibits that have been submitted in this case, the court finds no evidence that the parties have completed the statutorily required mediation required by NRS 38.310.

That statute provides, in relevant part:

> No civil action based upon a claim relating to [t]he interpretation, application or enforcement of any covenants, conditions or restrictions applicable to residential property . . . or [t]he procedures used for increasing, decreasing or imposing additional assessments upon residential property, may be commenced in any court in this State unless the action has been submitted to mediation.

Nev. Rev. Stat. § 38.310(1). Subsection (2) continues, mandating that a "court shall dismiss any civil action which is commenced in violation of the provisions of subsection 1." Nev. Rev. Stat. § 38.310(2).

Subsection (1) of NRS 38.330 states that "[u]nless otherwise provided by an agreement of the parties, mediation must be completed within 60 days after the filing of the written claim." Nev.

**James C. Mahan**
**U.S. District Judge**

Rev. Stat. § 38.330(1). However, while NRS 38.330(1) explains the procedure for mediation, NRS 38.310 is clear that no civil action may be commenced "unless the action has been submitted to mediation." Nev. Rev. Stat. § 38.310. Specifically, NRS 38.330(1) offers in relevant part:

> If the parties participate in mediation and an agreement is not obtained, any party may commence a civil action in the proper court concerning the claim that was submitted to mediation. **Any complaint filed in such an action must contain a sworn statement indicating that the issues addressed in the complaint have been mediated** pursuant to the provisions of NRS 38.300 to 38.360, inclusive, but an agreement was not obtained.

Nev. Rev. Stat. § 38.330(1) (emphasis added). Moreover, nothing in NRS 38.330 provides that the Nevada Real Estate Division's ("NRED") failure to appoint a mediator within 60 days constitutes exhaustion, nor does the statute place the burden on NRED to complete mediation within a specified period of time. As discussed, there is no indication in this case that the NRED mediation has been completed.

NRS 116.1116 states: "Every contract or duty governed by this chapter imposes an obligation of good faith in its performance or enforcement." Notably, the bank alleges, in relevant part:

> HOA breached its duty of good faith by not identifying the super-priority amount of its lien for [the bank], by not notifying [the bank] that its security interest was at risk, by rejecting [the bank]'s attempt to tender the super-priority amount, and by obstructing [the bank's] attempts to protect its security interest in the property.

(ECF No. 4 at 10). Therefore, this court would have to evaluate the applicable CC&Rs to determine the duties that could be basis for the claim. *See McKnight Family, L.L.P.*, 310 P.3d at 558. Thus, unless NRED appoints a mediator or the parties agree on one, the bank's claim for breach of NRS 116.1113 is unexhausted under state law. Accordingly, this claim is dismissed.

**IV.     Conclusion**

Based on the foregoing, the court will grant SFR's motion for summary judgment (ECF No. 55) as to its quiet title claim against the bank and the borrowers and will dismiss SFR's claim for injunctive relief. SFR has met its burden of demonstrating that there is no genuine dispute of material fact as to its quiet title claim against the bank and borrowers and is entitled to judgment as a matter of law. Thus, SFR is entitled to a declaratory judgment that the bank's first deed of trust was extinguished pursuant to the properly conducted foreclosure sale, where SFR

**James C. Mahan**
**U.S. District Judge**

purchased the property for value in the amount of $10,100.00.  Correspondingly the court will grants the HOA's motion for summary judgment because it seeks the same result.

Furthermore, the court will deny the bank's motion for summary judgment.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that SFR's claim for preliminary and permanent injunction be, and the same hereby is, DISMISSED.

IT IS FURTHER ORDERED that the bank's claims for breach of NRS 116.1113 against the HOA and injunctive relief be, and the same hereby are, DISMISSED.

IT IS FURTHER ORDERED that SFR's motion for summary judgment (ECF No. 55) be, and the same hereby is, GRANTED IN PART and DENIED IN PART, consistent with the foregoing.

IT IS FURTHER ORDERED that the HOA's motion for summary judgment (ECF No. 54) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that the bank's motion for summary judgment (ECF No. 53) be, and the same hereby is, DENIED.

DATED March 17, 2017.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**